Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| SEGUNDO SERRANO RIVERA<br><br>RECURRENTE<br><br>v.<br><br>DEPARTAMENTO DE CORRECIÓN Y REHABILITACIÓN<br><br>RECURRIDA | TA2025RA00327 | *Revisión Decisión Administrativa procedente del Departamento de Corrección y Rehabilitación*<br><br>Caso núm.:<br>PA-439-25<br><br>Sobre:<br>Remedios administrativos |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Robles Adorno, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de diciembre de 2025.

El 21 de octubre de 2025, el señor Segundo Serrano Rivera (el señor Serrano Rivera o el recurrente), por derecho propio y de *forma pauperis*, presentó ante nos un recurso de *Revisión Judicial* en el que nos solicitó que revoquemos la determinación titulada, *Respuesta al miembro de la población correccional*, emitida el 6 de octubre de 2025, notificada al recurrente el 10 de octubre de 2025, por el Departamento de Corrección y Rehabilitación (DCR o parte recurrida).[1]

En el aludido dictamen, el DCR resolvió que ha aplicado los créditos y bonificaciones correspondientes a la pena del recurrente y fundamentándose en lo establecido en la Ley Núm. 87 del 4 de agosto de 2020 (Ley Núm. 87-2020).

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

---

[1] *Véase* expediente administrativo, pág. 3.

**I.**

El caso de autos tuvo su origen el 3 de septiembre de 2025, cuando el señor Serrano Rivera instó una *Solicitud de remedio administrativo* en la que reclamó que la parte recurrida ha incumplido en acreditarle unas bonificaciones.[2] En síntesis, alegó que se le debe incluir en el expediente unas bonificaciones por el tiempo en el que estuvo en la Institución 676. Además, solicitó que se le orientara sobre los trámites ulteriores para que se le incluyesen dichas bonificaciones.

Así las cosas, el 6 de octubre de 2025, notificada al recurrente el 10 de octubre de 2025, el DCR emitió una *Respuesta al miembro de la población correccional* en la que acreditó, en unión a una *Hoja de Liquidación de Sentencias* que, el señor Serrano Rivera ingresó el 7 de junio de 2024 a una institución carcelaria, P 676, por infringir el delito de tentativa del Art. 127-A del *Código Penal de Puerto Rico*, Ley Núm. 146-2020, 33 LPRA sec. 5186a (en adelante, el *Código Penal*) y el Art. 6.08 de la *Ley de Armas de Puerto Rico de 2020*, Ley Núm. 168-2019, 25 LPRA sec. 466g (en adelante, *Ley de Armas*) tras ser sentenciado el 15 de abril de 2025.[3] Ante ello, fue sentenciado por el Tribunal de Primera Instancia a una pena de cinco (5) años por la tentativa del Art. 127-A del *Código Penal*, *supra* y la pena de tres (3) años por el Art. 6.08 de la Ley de Armas, *supra*, de forma consecutiva para una sentencia total de ocho (8) años. Consecuentemente, el DCR le aplicó la Ley Núm. 87-2020, a razón de seis (6) días por cada mes. Por ende, con respecto a la sentencia de cinco (5) años el recurrente ha bonificado un (1) año y en atención a la pena de tres (3) años ha bonificado siete (7) meses y seis (6) días.

Inconforme, el 21 de octubre de 2025, el recurrente presentó ante nos un recurso de *Revisión Judicial* en el que no formuló

---

[2] *Íd.*, pág. 7.
[3] *Íd.*, pág. 3.

señalamientos de error. Sin embargo, le solicitó a esta Curia corregir las bonificaciones que surgen en la *Hoja de Liquidación de Sentencia* dado que la Ley Núm. 87-2020, *supra*, alteró la forma en que se computa la sentencia.

En atención a nuestra Resolución, el 1 de diciembre de 2025, el DCR radicó un *Escrito en cumplimiento de resolución.*

Con el beneficio de la comparecencia de las partes, procederemos a resolver el caso de epígrafe.

**II.**

**A.**

Los organismos administrativos merecen la mayor deferencia posible de los tribunales. *Otero* v. *Toyota*, 163 DPR 716, 727 (2005). Tal deferencia se apoya en que las agencias administrativas tienen conocimiento experto y la experiencia especializada de los asuntos que le son encomendados. *Otero* v. *Toyota, supra*, pág. 728. Un principio establecido es que las determinaciones de las agencias administrativas tienen una presunción de legalidad y corrección en la que no deben intervenir los tribunales. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Las determinaciones de hecho de las agencias tienen a su favor una "presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas." *Henríquez v. Consejo Educación Superior*, 120 DPR 194, 210 (1987). Nuestro Tribunal Supremo ha expresado que los tribunales no deben intervenir o alterar las determinaciones de hechos de un organismo administrativo "si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad". *Otero Mercado v. Toyota de P.R. Corp.,* 163 DPR 716, 727-728 (2005); *Domingo v. Caguas Expressway Motors*, 148 DPR 387, 397 (1999). Las determinaciones de hecho serán sostenidas por el tribunal, si se basan en evidencia sustancial que no obra en el

expediente administrativo. *Vázquez v. Consejo de Titulares*, 216 DPR ___ (2025), 2025 TSPR 56. Ejercitando un criterio de razonabilidad y deferencia, los tribunales no deben intervenir o alterar las determinaciones de hecho realizadas por una agencia si están sostenidas por evidencia sustancial que surge del expediente. *Otero* v. *Toyota, supra*, pág. 728. El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra*, pág. 728; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). La parte que impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra*, pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra*, pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra*, pág. 728. La parte que alegue ausencia de evidencia sustancial debe demostrar que existe:

> "[O]tra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial [...] hasta el punto de que se demuestre claramente que la decisión [del organismo administrativo] no está justificada por una evaluación justa del peso de la prueba" que tuvo ante su consideración. *Metropolitan S.E. v. A.R.P.E.*, 138 DPR 200, 213 (1995) citando a *Hilton Hotels v. Junta de Salario Mínimo*, 74 DPR 670, 686 (1983).

El máximo foro judicial ha definido evidencia sustancial como aquella "que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Otero* v. *Toyota, supra*, pág. 728; *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). La parte que

impugne una determinación de hecho de una agencia debe convencer al foro apelativo que la determinación no fue basada en evidencia sustancial. *Otero v. Toyota, supra,* pág. 728. Para rebatir la determinación que cuestiona, debe demostrar que existe otra evidencia en el expediente que reduzca el valor probatorio. *Otero* v. *Toyota, supra,* pág. 728. Si la parte no demuestra en la revisión judicial otra evidencia sustancial que sostenga la determinación de la agencia, entonces no se alterará la determinación de la agencia. *Otero* v. *Toyota, supra,* pág. 728.

Por otro lado, respecto a las conclusiones de derecho, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675. Las conclusiones de derecho serán revisables en todos sus aspectos por un tribunal. *Vázquez v. Consejo de Titulares, supra.* La interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. *Vázquez v. Consejo de Titulares, supra.* Ello, como mecanismo interpretativo del poder judicial. *Íd.* Ahora bien, lo anterior "no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota, supra,* pág. 729. Consecuentemente, cuando un tribunal llega a un resultado distinto al de la agencia, éste debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd.* Dicho de otro modo, "[e]l tribunal podrá sustituir el criterio de la agencia por el propio solo cuando no pueda hallar una base racional para explicar la decisión administrativa". *Íd.*

No obstante, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *Otero* v. *Toyota*, 163 DPR 716, 730 (2005). Al ejercer la función revisora, el tribunal está obligado a considerar la especialización y experiencia de la agencia sobre las cuestiones que tuvo ante sí. *Rebollo* v. *Yiyi Motors*, 161 DPR 69, 78 (2004). Por otro lado, las determinaciones de derecho, el tribunal tiene amplia autonomía para revisarlas en todos sus aspectos. *Rebollo* v. *Yiyi Motors, supra*, pág. 77.

**B.**

El Art. VI, Sec. 19, Const ELA [Const P.R], LPRA, Tomo 1, establece como política pública que, "...reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Cónsono con lo anterior, la ley orgánica del Departamento de Corrección y rehabilitación, Art. 2 de *El Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, Plan de Reorganización Núm. 2 de 21 de noviembre de 2011 (Plan de Reorganización Núm. 2-2011), según enmendado, 3 LPRA., Ap. XVIII, Art. 2, el DCR tiene el deber de custodiar y proveer una rehabilitación a las personas confinadas. Asimismo, el citado artículo dispone lo siguiente:

> Con la aprobación de este Plan, se decreta como política pública del Gobierno de Puerto Rico la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de

penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad.

Con ello, dentro de las facultades del Secretario del DCR, dicho ente administrativo tiene la facultad de "adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios". Art. 7 (aa) del Plan Núm. 2-2011 *supra* sec. Ap. XVIII, Art. 7.

Como parte de las funciones del DCR, este tiene el deber de "ampliar los programas de educación y trabajo para que impacten a toda la población correccional que interese participar y asegure la aplicación correcta de los sistemas de bonificación por trabajo y estudio que permitan las leyes aplicables…". Art. 5 del Plan Núm. 2-2011, 3 LPRA, Ap. XVIII, Art.5. Cónsono con lo anterior, una persona recluida o disfrutando de la libertad bajo palabra, y observe la buena conducta y asiduidad, tiene derecho a una rebaja en la pena de su sentencia. Art. 11 del Plan Núm. 2-2011, 3 LPRA., Ap. XVIII, Art. 11. Con ello, el Art. 11 del Plan Núm. 2-2011, *supra*, dispone que,

[…]

Toda persona sentenciada a cumplir término de reclusión en cualquier institución, con posterioridad a la vigencia del Código Penal de Puerto Rico de 2004, que esté disfrutando de un permiso concedido a tenor con lo dispuesto en este Plan, o que se encuentre recluida en cualquier entidad gubernamental o privada como parte de un programa de rehabilitación, que observare buena conducta y asiduidad, tendrá derecho a las siguientes rebajas del término de su sentencia, las cuales se computarán desde su admisión a la institución de que se trate: c) por una sentencia que no excediere de quince (15) años, seis (6) días en cada mes; o d) por una sentencia de quince (15) años o más, siete

(7) días por cada mes. Dicha rebaja se hará por mes, que representará un plazo de 30 días. Si la sentencia contuviere una fracción de mes, bien sea al principio o al fin de dicha sentencia, se le abonarán un (1) día por cada cinco (5) días o parte de los mismos, contenidos en dicha fracción.

[...]

Por otro lado, la Regla V del *Reglamento para atender las solicitudes de remedios administrativos radicadas por los miembros de la población correccional,* Reglamento Núm. 8583 del 4 de mayo de 2015 (Reglamento Núm. 8583) rige cómo se deben llevar a cabo los procedimientos ante el DCR con relación a los reclamos de los confinados. Con ello, la Regla VI del Reglamento Núm. 8583 dispone que, la División de Remedios administrativos del DCR tendrá jurisdicción para atender las solicitudes de remedio radicadas por los confinados en cualquier institución o facilidad correccional que se encuentren. Los incidentes de los cuales un miembro de una institución correccional es:

a. Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o su plan institucional.
b. Cualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento.
c. Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme la reglamentación vigente sobre la "Suspension de Privilegios por Razones de Seguridad"
d. Alegaciones de violencia sexual por parte de un miembro de la población correccional conforme "Prison Rape Elimination ACT" (PREA) (115.51ª, d,115.52-b1, b2,b3).

### III.

En el caso de autos, el señor Serrano Rivera argumentó que, la parte recurrida no le ha acreditado las bonificaciones correspondientes conforme lo establecido en la Ley Núm. 87-2020 y, por tanto, solicitó que este foro revisor ordenara que el DCR computara correctamente las bonificaciones de su caso.

Conforme las normas jurídicas pormenorizadas, nuestra Constitución consagra como política pública que una persona

convicta debe tener un tratamiento adecuado y recibir rehabilitación. Ante ello, la ley orgánica creó el Departamento de Corrección y Rehabilitación en la que le delegó a dicho ente administrativo la potestad de promover la rehabilitación de las personas convictas. Cónsono con lo anterior, la ley orgánica del DCR le encomendó la labor de cuando un convicto sentenciado bajo el *Código Penal, supra* y el derogado Código Penal de 2004, podrá recibir bonificaciones por buena conducta y asiduidad. En lo pertinente a la controversia, la Ley 87-2020, la cual enmendó el Art. 11 del Plan Núm. 2-2011, *supra*, establece que un convicto que fue sentenciado a una pena menor de quince (15) años puede recibir bonificaciones hasta un máximo de seis (6) días por cada mes.

Ante este cuadro, luego de un análisis del expediente del caso ante nuestra consideración, resolvemos que el DCR ha cumplido en acreditarle al recurrente las bonificaciones correspondientes a tenor con la Ley Núm. 87-2020. Ello, pues el señor Serrano Rivera fue sentenciado a una pena de ocho (8) años por violentar lo dispuesto en el Art. 127-A del Código Penal, *supra* y el Art. 6.08 de la *Ley de Armas, supra*. [4] A esos efectos, el DCR computó los ocho años de su pena, de cumplir con los requisitos de buena conducta y asiduidad, a partir de la fecha en que fue sentenciado, es decir desde el 7 de junio de 2024. Consecuentemente, al aplicar lo dispuesto en la Ley Núm. 87-2020, el recurrente cumpliría una pena de seis (6) años y cinco (5) meses, tal como surge en su *Hoja de Liquidación de Sentencia*. Atisbamos que, la pena, aplicada a las bonificaciones, está sujeta a que el recurrente cumpla con los criterios del DCR para beneficiarse de las bonificaciones computadas.

A la luz de los fundamentos esbozados, confirmamos la *Resolución* recurrida en virtud de que el DCR aplicó conforme a

---

[4] *Véase* Art. 11 del Plan Núm. 2-2011, *supra*.

derecho las bonificaciones aplicables a la pena del señor Serrano Rivera.

**IV.**

Por los fundamentos que expondremos a continuación, confirmamos la *Resolución* recurrida.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones